Good morning, Mr. Schulze, members of the panel. My name is John Lambrose. I'm here on behalf of Mr. Collins, the petitioner below, and the appellant. I'd like to focus on two aspects of the brief in the ten minutes that I have with the Court. The first one is whether or not the default rule that was employed to preclude the review of over 20 of Mr. Collins' claims was in fact in place and applied to Mr. Collins' state post-conviction action, specifically NRS 347261, Nevada's timeliness rule. That rule did not take effect until January 1st, 1993. Mr. Collins' state post-conviction action was pending prior to that time. Under Nevada law, and I think the Nevada Supreme Court made an effort to try to clarify what was going on with regard to the lineage of the Nevada post-conviction statutes in their recent decision in Pellegrini v. State, 34 Pacific 3rd 519. In Pellegrini, the Court talked about the lineage of 177 315, the statute that I am taking, that is my position, was in effect during Mr. Collins' first state post-conviction action, and talked about the fact that that statute was in place until January 1st, 1993. So that statute was definitely in place when Mr. Collins filed his motion for extension of time in which to file his state post-conviction relief action. That was filed in July of 1991 within the one-year period that was in place, Nevada's one-year habeas timeliness rule that was in place under 177 315. And under Nevada law, and the case that says this is an early Nevada case called State v. Burns at 820 Pacific 2nd 765, a 177 action, in other words a state post-conviction relief action attacking the validity of the judgment and sentence in state court, is a continuation of the same or original criminal case. So when Mr. Collins' lawyer, his appellate lawyer, and I think I fleshed out pretty thoroughly in the brief the fact that he had a lot of trouble with his appellate lawyer, she filed an Anders brief after a 10-day jury trial in which he got six consecutive life sentences, and she didn't even file an Anders brief that conformed with Nevada state law, which the Nevada Supreme Court pointed out to her. There was a lot of animosity between Mr. Collins and his appellate attorney. She certainly, to her credit, the one thing that she did do, I think, that helped preserve a record for Mr. Collins is she advised the state trial court within the one-year period that Collins needed a lawyer for post-conviction. After the appeal was final in September of 1990, his direct appeal from conviction, and within the one-year period, she moved well within the one-year period obviously since the clock doesn't start until the direct appeal is final, she filed a motion with the trial judge saying I want out of this case and he needs a lawyer because he has a lot of issues that need collateral development. Now, admittedly, Nevada law does not mandate the automatic appointment of counsel in post-conviction, but it is discretionary and there has to be some exercise of discretion otherwise the rule is worthless, and there was no exercise of discretion. And as I point out in my briefing, Mr. Collins was the unhappy recipient of five ex parte hearings in which everybody but him was present, including on one occasion his appellate attorney, Ms. McMahon, who made representations on the record that she had in fact delivered his file, did in fact deliver his file. I submit that there's a good chance that representation was untrue, and more importantly, it was a violation of Nevada law for the Nevada state trial judge to hear evidence without Mr. Collins being present, and this was the most critical evidence. And I'm talking about the hearing that occurred on November 23, 1992, and I excerpted from the minutes on the opening brief at page 10. Ms. McMahon makes this representation telephonically, I guess. Mr. Collins isn't at the hearing. Mr. Collins no doubt would have rebutted that by submitting contrary evidence, and then we would have had a genuine question of fact. Well, Mr. Lambros, one of the problems I'm having with following your argument is that it seems that the trial court ruled that the petition was untimely, but the Nevada Supreme Court affirmed on timeliness grounds that it cited 34-7-26. Right. It cited the rule that didn't apply. So this is really Ford v. Georgia. This is this court's Bean case. How do we know that it didn't apply? Is there some state court decision that says it did not apply in this case or does not apply under these circumstances? I think, yeah, and Mr. Collins never got a chance to demonstrate that either in front of the state judge or the federal judge below. I think there's a very good argument. And, again, admittedly, this is a question of state law, but the question of federal law that you must decide whether or not it was clear and in place at the time is dependent on that question of state law. Well, 34-7-26 seems to have been clearly in place at the time, and we saw a hold in the valerian. It was not in place at the time that his state post conviction. What do we do with a statement by the Nevada Supreme Court that 34-7-26 controls the case? You're telling us that was a mistake. Yes. It's no different than what you did in the ‑‑ And how do we unravel that when the Nevada Supreme Court tells us this is what they were doing? The same way that the court ‑‑ this court unraveled it in Calderon v. District Court. When you rejected the California Supreme Court's decision in Calderon, the case I'm talking about is 96-Fed-3-11-26 at 1130, where the California Supreme Court interposed a default that was the Henry Clark California Supreme Court case that was not in place at the time. Pardon me for interrupting, but at page 23 of your brief, you say that the Nevada statute 177.315 was superseded by 34-7-26. Right. So you're saying that in some way or another, 177.315 differs from 34-7-26? Profoundly, it differs. If you look at 315, the good cause, in other words, what you need to show if you violate the one-year rule, unless there is good cause shown for the delay, a proceeding under 177 must be filed within one year. That's the statute. The Nevada Supreme Court has interpreted good cause as basically just about anything. In the Cawley case, 773 Pacific 2nd, 1229, good cause means a substantial reason, one that affords a legal excuse. The Attorney General, and I think this is critical in answer to your question, Judge Thompson, the Attorney General admitted this below. If you look at my excerpt. Admitted this? What does this mean? I'm sorry. Admitted that the two standards were incredibly different. In other words, the standard that I think applies, 177, was much more differential to the petitioner. If you look at excerpts of record pages 289 and 290, the State argued in response to Mr. Collins' pro se briefing that he was completely wrong. 177 didn't apply. 34 applies. And 34's much more onerous standard applies. So if you look at, and believe me, I lived through this because I was on this habeas committee in the early 90s in Nevada that tried to streamline this. And if there's one thing in my humble opinion that everybody assumed, and that was any litigation that was pending before the enactment of Chapter 34 was going to be reviewed pursuant to the more deferential cause standard in 177. And you say the Nevada Supreme Court didn't decide that rather obvious issue? The Nevada Supreme Court didn't get a chance. I don't think it's the Nevada Supreme Court's fault completely in this thing, because nobody really gave, this wasn't very well litigated. And I just, quite frankly, with all respect to the court, I think they just rubber stamped it the same way that the California Supreme Court did in Waltrius and Clark. And this can be cleaned up now, because the rule was, and I wanted to try to reserve a minute. I'm sorry. Well, how do we know, though, that they just, I mean, they said it was, they said that it was controlling. How do we know that they didn't rule against you on that point? Because it was never litigated. Because Mr. Collins never got, and that's another part, that's another aspect of my argument. Mr. Collins never got a chance, and he was entitled to under state law and federal due process considerations. He was entitled to make a good cause showing. He never got a chance because when he finally filed his state petition, there was an opposition filed, and he never got a chance to do a reply. And if he had a chance to do that reply, I would have, if I had been representing him, I would have made the state court do two things, allow him to litigate good cause and decide which statute applied and resolve the motion for extension of time that he filed. Remember, he filed a motion for extension of time within the one-year rule. And in an ex parte hearing, the state of Nevada said, oh, judge, let's consider that later. Let's just consider that when he files the petition. That never got considered. He got ex parte'd at a court. He's sitting in a prison cell in Ely, and this is all happening here down in Las Vegas, 400 miles away. It's just not fair. And that's the gravamen of my argument with regard to whether 34, if it applied, was even applied properly. He didn't violate 34, even if it did apply. Let me ask you two questions. Did anybody ever go back to the Nevada Supreme Court under the equivalent of a writ of error, quorum volvus, or something like that under state court and say, hey, look, you people made a mistake? No, we have not. Is there any reason why you did not? Well, I didn't because I was appointed by this court to do the briefing here. And quite frankly, I think I can win in front of this court. Obviously, if I can't, then that may be a remedy. Or an original writ to the Nevada Supreme Court may be a remedy. But quite frankly, you know, the petitioner and the horse come before the cart. I mean, it seems to me that you're asking us to resolve what the Nevada Supreme Court said. It would be nice to have had them resolve it or at least had a shot at resolving it before we try to trace around in this. But, again, with all due respect, Judge Trott, I'm not asking you to do anything that the petitioner in the Bean case didn't ask you to do, and he prevailed. In which case? In Bean, in the Calderon v. District Court case, the one we just called Bean, 96, Fed 3rd, 1126, predicated on Ford v. Georgia. Who was on that panel? You know, I have the case. You want me to check that, Judge? What does Wells v. Mass hold? You cite it twice, and you don't really explain it. You say 34.726.1. That rule did not apply to Collins' case and, therefore, was not violated. You say C. Wells, but I have no explanation of what Wells holds. I'm sorry. I should have done that. Wells is a first cousin to Bean, and Wells says if the rule is not in place, if the default rule doesn't apply, then you haven't broken it. And Wells and Bean come from Ford v. Georgia. Ford v. Georgia was a case out of Georgia where the Georgia Supreme Court employed a contemporaneous objection rule in a Batson hearing that wasn't in effect at the time that Mr. Ford ostensibly defaulted. And what the United States Supreme Court did in a unanimous decision, I believe, said, well, you can't have Coleman v. Thompson adequacy if you didn't break a rule that wasn't in effect. You can't impose a rule and then impose it retroactively. And that's what I'm saying. 34.726 was not in effect. That's the argument. And I really wanted to refer to my argument that Mr. Collins, at the very least, is entitled to a remand in an evidentiary hearing on the issue of consistent application after this Court's decision in Hill v. Roe. He asked for an evidentiary hearing on the default itself, on cause and prejudice, which I think he is also entitled to. He is certainly entitled to the hearing that he asked for on whether or not this was consistently implied. And if this Court is not inclined to find in my favor with regard to my Ford v. Georgia argument, I think at the very least the Court should remand this back down for some more development with regard to the legal implications of what happened in this case and the facts, whether or not the rule was consistently applied and give me a chance to make that showing and give the State of Nevada, put on the State of Nevada what is their burden. And their burden is to show that the rule is consistently applied. And under Hill, they never did that. In fact, the lower court imposed the wrong rule. The lower court thought it was Mr. Collins' burden. And with all due respect to the lower court, the Hill-Bennett v. Mueller line of cases was not in effect at the time. But it is in effect now. And what this Court did in Hill, and I have that cited in my brief. It's at 298 Fed 3rd, 796, 799. It was remanded back down, the Hill case was remanded back down for a full and complete hearing on whether or not the default rule that was employed was consistently applied. Mr. Lambros, how long have you been with this case? When did you get in it? At what level? I think I got in, this Court appointed our office I think last spring, I want to say maybe. Oh, just for the appeal? Yes. Now the argument that you're making that 34-7261 doesn't apply, was that made in the district court too? It was not. Because it's not referred to by the, in the memorandum of decision and order at all. Right. Is this a new argument coming to us for the first time on appeal? Well, you know, I don't think, no, I don't think it's a new argument. And quite frankly, I don't think I should be bound. Let me just say that Mr. Collins rather inartfully tried to make it in a couple of his pleadings. Where and how? Well, could I, if I could have the Court's indulgence, I think I made a note of that. Because I just read that memo again and I saw no reference to that issue at all in Judge Reed's decision. So I'm curious as to when the issue was raised. Judge Reed usually answers things like that. If one of the lead arguments is the statute doesn't apply. I just think he didn't, you know, if he did, if Mr. Collins had had the benefit of counsel, it certainly would have been raised more artfully. Yeah, what does artfully mean? Tell us where he raised it and how. Well, I think if you look at his response, responding points and authorities, his opposition to the motion to dismiss at pages 220 to 247 in my excerpts, and his reply points and authorities in pages 288 to 292 in the excerpts. My clerk is busily writing those down. I'm sorry. Go ahead. I have a note to myself here, and I'm hoping it's correct, that at page 312 Mr. Collins made a point that 34726 sub 1 does not even apply to his petition. Again, I'm hoping that's correct. But I have a note to myself in my outline that that's where he makes the argument. You don't have that, though, in the excerpt so you can read it to us? That's right. It's good. We're paying a lot of attention to this right now. It would be nice. Okay. He says in one sentence here, and I've underlined it in red, in fact, this is at page 312, in fact, the term inclusive as used in 34720, and it's like a typo, makes it abundantly clear that the one-year time limit prescribed by 726 does not apply to petitioner's case. Well, all he's doing is saying that the statute doesn't apply. He's not saying that really the other statute applied. Well, how high a burden do you want to hold a pro se litigant? I would think that there's a lot of good law that this court has developed since the inception of the ADPA, at least, that pro se litigants shouldn't be held to the standard of too tight an application of how they pled it below. Well, it's not so much how high a burden do we want to hold them to. You know, Congress has put some real clamps on us in the last few years in terms of how many times we're going to allow things like this to be started ab initio after we're already running. So that's as close as you can come. He says the statute doesn't apply, not that the other statute applies. But this is, you know, there's plenty of good law from the circuit that talks about a question of law, whether it's raised and developed below can still be heard on appeal because it is a question of law. Well, where did you raise this? I'm looking at your blue brief, and you talk about whether there was cause under the 34 statute. Yes. But where do you argue that the burden was much less under 117 and the court, the Nevada court erred by not considering and the district court erred by not saying that he was robbed of the benefits of 177.315? Well, I argue it. I argue at pages 23 and 24 that it page 23. And I don't find that 23. Well, Your Honor, between the brief and oral argument, your argument is definitely blossomed from a bud into a flower. But go ahead. Well, I was thinking from a flower into an orchard or a garden. But I'll take bud to flower. I don't make that argument. And quite frankly, I don't have to make that. And, again, I don't mean to sound arrogant. I don't have to make that argument under Ford v. Georgia or Bean. All I need to show is that the rule was not in effect. Yeah, but you've got to raise it in your opening brief or your opponent can't even respond to it. He didn't even respond to the argument that it doesn't apply. I think you just told me you didn't raise that argument in your opening brief. Because I don't. Because I didn't, in my opinion, Your Honor. And, again, I apologize if I should have. And, quite frankly, I would certainly raise it now. It's not necessary to make that argument under the United States Supreme Court precedent starting in Coleman and certainly becoming more clear in Ford v. Georgia. This is really no different than Bean. Mr. Bean didn't have to get down into the weeds to talk about why the two rules are different. But what he said and what he was able to prevail upon and what this court, what I hope, should be bound by, is the rule was not in effect. If it's not in effect, it doesn't apply. It can't apply. That's just, you know, that's federal jurisprudence. That's the very heart of Coleman. Thank you, Mr. Lambros. We'll hear from the other side, and then we will give you an opportunity to respond. Thank you very much. Good morning. I'm Vic Schulze from the Nevada State Attorney General's Office. I'd point out to the Court that at EOR 135, Mr. Lambros included a copy of the subject state court habeas petition that was filed under NRS 34-700-710 at SEC. This is the petition that 34-726 was applied to by the state courts. That's got a file stamp date of September. It looks like September 29th of 1994. If Mr. Lambros is correct that NRS 34-726 took effect in 1993, then certainly that was the statute of limitations bar that was correctly applied by the Nevada Supreme Court. Just as this court started applying the AEDPA statute of limitations after Congress passed AEDPA and it took effect in 1996, the Nevada Supreme Court applied the law as it existed at the time. Both were one-year statutes of limitations. But we gave a period of time, didn't we, like one year within which to, from the effective date? I'm sorry? In the federal courts, you did, yes. You gave until April 23rd, I think, of 1997 if something had transpired prior to that point in time. But NRS 34-726 was the statute of limitations that was in effect, and Mr. Lambros concedes that when the state petition was filed. What happened in this case was between the, under either statute of limitations, under Chapter 177 or Chapter 34 of the Nevada revised statutes, there was one-year statute of limitations and there was an exception for cause and prejudice, which I presume we borrowed from the federal courts. The cause and prejudice that was argued both in the state court petition and in the federal courts was that my attorney would not turn over the file. Lee Elizabeth McMahon was slow in turning it over. It took her more than two years to turn it over. But that logic is problematic for three different reasons. Number one, this petitioner never explained to anybody in state court or in federal court, at the trial court level or the appellate level, why he needed his records from Lee Elizabeth McMahon, from his attorney. And the Nevada Supreme Court said there is no general rule that says simply by telling us, I need my records, we're going to postpone this thing indefinitely until your trial court, sorry, until your attorney gives it to you. Second problem with the logic was that there was no explanation ever given in a couple of these motions for extension that, for example, at EOR 195, it was never explained why he needed the records. Secondly, it was never explained why the petitioner didn't go to an outside source like the county clerk or the court or the district attorney or anybody else who would have had copies of these records. Nowhere here, because my understanding from the record is that it never existed, this petitioner never filed a motion to the state trial court for the court to provide him a copy of his records or for the court clerk to do so at the public expense. Never requested that. The third problem is even, and this is probably the crux of the entire case, even after this petitioner concedes that he got his records in March of 1997, he still took 18 months to file his state court petition under either one of the one-year statutes of limitations. So even if we're going to be very liberal, and concededly it's not in my nature, but if we're going to be extremely liberal on this issue, and let's toll. Let's toll until the day he gets the record in March of 1997. Now he's got how long? He's got a year. He's got a year, but he waited until 18 months because he made the strategic decision to go to the U.S. District Court in Reno to file a federal habeas petition instead of filing a state petition. So he has a year after he got the record? He has, under the state law, he has a year from remitted or issuing from his direct appeal to file his habeas petition. Now, let's toll that. I don't know if the ---- But he also got the state court record, and that year had not expired? No, the year had expired. It took him two or two and a half years to finally get those records. Okay. The attorney was slow. We don't know if he needed the records, and we don't know why he didn't go somewhere else to try to get them. What you're saying is let's give him the benefit of the doubt and start the clock right on the day he gets the files, and he's still late. Yeah, we could. We can be as liberal as we want. Let's assume he needed the record. He never said he did. Let's assume he did. Let's assume he couldn't get it from someplace else. Again, we don't know that he couldn't because he didn't try, but let's assume he couldn't. It's absolute necessity. This attorney is the only place in the world he can get this stuff. He gets it. Now, keep in mind, when he filed his motion for extension in the state district court, he promised the court he would file his petition within 60 days of getting the record. And instead of following through on his own promise, which would have been 60 days after March of 1993, he didn't file until September of 1994 because he took a stroll through the federal court up in Reno, and the federal court said most of these claims are unexhausted. You've never filed a state court petition. So he certainly had the record to file something in federal court. He should have filed that petition in state court. He knew about the statute of limitations because he was filing these motions to continue. He knew that he had to file his state court petition before the federal court petition. He was kicked out of federal court. He made the strategic decision to go to federal court first, in spite of the fact that he knew about the one-year statute of limitations and his need to argue cause. The difficulty, I think, with Mr. Lambros' argument is, number one, the Nevada Supreme Court applied the law that existed at the time. Secondly, it was the same one-year statute of limitations. But the real crux of the problem is, even if you give every benefit of every doubt to this petitioner, he still sat on it for 18 months. He went to the wrong court. That's not the fault with the Nevada Supreme Court. Whose fault was it? It was the petitioner's fault because he made the strategic decision to file something up in Reno in the U.S. District Court instead of filing something in Las Vegas in the state district court. And what was the state's answer when he filed the case in Reno? They moved to dismiss. One of my associates up in our Carson City office moved to dismiss on procedural grounds. And what did your associate say with regard to whether the state court would be open to this petitioner? We didn't make any promises. What we said was you have to go back and exhaust. Did you say anything about what was available to the petitioner if he got back there? We didn't make any promises, as I recollect. I don't have that document in front of me. What did you say? My recollection of the record is we told him he had to go back and raise his claims in the state courts. Did you represent the claims would be addressed on the merits? I am not aware that we did, no. If we did, that would have been a mistake on our part. You seem awfully well prepared, and all of a sudden you don't seem to remember anything. Is there some reason for your all of a sudden failure of recollection? The reason for my failure of recollection, Your Honor, is that's not a representation. I've been doing habeas for about ten years. I have never made that recommendation. My recollection is that Mr. Simmons did this motion in state court. It was not Mr. Simmons' practice ever to make a promise that the state court would hear those claims. The argument that we raised generally, and I have to concede, I don't have that in front of me right at the moment. I did not review it last night. The argument that we generally raise is under Rose v. Lundy, you have to go back. I feel like this is sort of a moving target here. I mean, I feel like we're talking about a different case than was in the briefs from both sides here. I mean, we're talking about arguments that it sort of seems like no one's ever made before, or we're getting into areas that really weren't discussed previously. The issue that I'm raising on the applicability of 726 and under this Court's ruling of Burns v. Vargas is exactly what I argued in the district court and is in my responsive brief. I think a good chunk of Mr. Lambros' argument here is new on the application of Chapter 177. Well, judicial estoppel. The applicability of 726 we argued below and argued here. As far as I can tell, judicial estoppel in Russell v. Ross wasn't raised in the trial court either. Do you have anything else you'd like to say? I do not. Good. We'll hear from Mr. Lambros again. Thank you. You're correct, Judge Trott. The judicial estoppel argument was not made in Collins 2, in other words, the case that we have taken up on appeal. The judicial estoppel argument surely was Mr. Collins set the tone for the judicial estoppel argument in Collins 1 because he said he – and it wasn't a strategic choice. He went into federal court in Collins 1 because he said he had no adequate state process. He made that argument. The State of Nevada in 1994, and I've excerpted the entire Collins 1 record in my – in my excerpts of record in volumes 4 and 5 – 3 and 4. And I made – and I made this argument, Judge Callahan, in my brief. It wasn't raised below because I didn't represent him below. The judicial estoppel argument. Well, right, but it was raised for the first time here in the briefing. Yes, in the briefing, yes. Which I'm struggling with. I'm sorry. I'm asking for a remand, too. He should have been appointed counsel. Keep in mind that the last time this man had a lawyer was in the 1980s, okay? He has not had a lawyer since then. He's asked for a lawyer, but he's been turned down every time until this court appointed me. That's just not fair. And it would have been a lot cleaner if we'd been able to litigate this below a little better. But with regard to the judicial estoppel argument, Judge Trott, we should win on that because even though they talked about anticipatory default peripherally, the AG did, in Collins 1, they wanted a dismissal without prejudice because they took the position that he had remedies in state court, you know, that basically they opposed him on when he went back to state court. And, you know, if that isn't Russell, I don't know what is. I wrote Russell. I know. Mr. Ambrose, if you're writing this opinion and, you know, we kind of go along with you and then we say, well, you know, this fellow, the one year filing should not have applied to this fellow because he didn't have his file. He needed his file. And maybe we adopt some rule that said without an attorney's file, it's obvious you can't apply, you can't apply for or proceed with habeas proceedings without that you need the file. And this guy didn't have it, and therefore, he should what? He got it within a year. If we say he should have been permitted a year within which to file after he got his file, he already had that. Well, and as soon as he got it, he went into federal court. But that's not what barred him. What barred him was he didn't file timely in state court. Well, because he took the position in federal court that he didn't have it. He took the position that if a judge isn't going to – a state judge isn't going to enforce an order compelling his lawyer to give him his file for three years, and if a judge is going to conduct four ex parte hearings, ultimately five. I understand. You know what I'm saying? I mean, what's the point? Let's get into federal court. The point is, didn't the Nevada Supreme Court say you go ahead and file with your motion for extension? They didn't tell him buzz off. No, no. The district court told him that. Right. Yeah. And then instead of following that – Then they told him to buzz off. Then when he files that, the district court tells him to buzz off in an ex parte hearing. I'm telling you, the only place this is going to get cleaned up is in the Ninth Circuit, one way or the other, and I'm hoping at the very least that I get a remand. Thank you, Mr. Lambros. The case just argued is order submitted. Thank you. As is Pickett v. Hatcher, order submitted on the briefs, and we'll move then to Honeywell v. San Francisco Housing Authority. At any time, if you want to take a break, just yell. Okay? We okay on taking a break? I forgot to tell you that. You want to take a break before the last case? Thank you.
judges: Thompson, Trott, Callahan